CINCINNATI STREET RAILWAY COMPANY v. MARY A. LEWIS.

1. No ORDINANCE REGULATING SPEED OF ELECTRIC CARS IN CINCINNATI.
   There is no ordinance regulating the speed of electric cars upon the streets of Cincinnati.

2. THE LAW IS THAT OF REASONABLE SAFETY.
   The law regulating the speed of such cars is that of reasonable safety in view of all the facts and surrounding conditions.

Paxton & Warrington and Kittredge & Wilby, for plaintiff in error.
Prescott Smith, contra.

JELKE, J.

The principal question raised in this case is what speed ordinance, if any, is applicable to the operation of the electric cars of the defendant company upon the streets of the city of Cincinnati. So far as the record shows three enactments by the legislative board of the city are submitted for consideration, and it is stated that these three ordinances comprise all the legislation upon the subject. They are:

1. The ordinance of February 7, 1879, which provides:
"No cars shall be drawn at a greater speed than six miles an hour." Coppock & Hertenstein's Ordinances, p. 538, Sec. 18, Par. 1.

2. The ordinance of October 25, 1889, which is:
"Sec. 2. That the schedule time for operating cars over said routes 5 and 7, and over all portions of said company's other street railway routes over which any kind of motors or means of rapid transit are authorized to be used, shall not exceed ten miles an hour; and Art. 1, Sec. 18 of the general street railway ordinance, passed February 7, 1879, or any provision of any other ordinance relative to the speed at which each car

shall be operated, shall not be applicable to such routes." Henderson's Ordinances, 1887–1895, p. 83.

3. The ordinance of October 14, 1892:

"Therefore, be it ordained by the board of legislation of the city of Cincinnati, that said ordinance, passed October 25, 1889, entitled 'An ordinance, No. 4286, to provide for the extension of route No 7 of street passenger railroads, and for the construction of an electric system of motive power along said route No. 7 and upon a portion of route No. 5, and to fix rates of speed upon certain routes,' be and the same is hereby repealed; and all rights, privileges and franchises granted to the Cincinnati Street Railway Company under and by virtue of said ordinance, be and the same are hereby forfeited and held for naught." Henderson's Ordinances, 1887–1895, p. 83.

The court below held that the ordinance of 1889, providing for a schedule rate not to exceed ten miles an hour, was void, as being unreasonable, and charged the jury that the ordinance of 1879, reading that "no cars shall be drawn at a greater speed than six miles an hour," obtained and was controlling upon the company.

We are of opinion that this ruling of the court below was error. The ordinance of 1879, this court feels, must be construed in view of existing facts and conditions. We cannot divest ourselves of the knowledge that in 1879 the cars in the streets of the city of Cincinnati were drawn by horses and mules, and the use of electric motive power for the purpose of propelling cars through the streets had not then been thought of as practicable.

The language of the ordinance, the use of the word "*drawn*," would point to the use of horses and mules, and indicate that electric rapid transit as we know it to-day was not in contemplation.

We are of opinion that the ordinance of 1879 is practically on a different subject matter—that modern electric locomotion is a different thing from that regulated by that ordinance. This brings us to the consideration of the ordinance of 1889.

We are of opinion that Sec. 2 of the ordinance of October 25, 1889, to the extent that it regulates the speed of electric cars, was repealed by the ordinance of October 14, 1892. Having come to this conclusion, we do not pass upon the question of reasonableness which engaged the attention of the court below.

It is contended by the street railway company that the ordinance of 1892 only partially repeals the ordinance of 1889. It is true that the 1892 ordinance speaks of fixing the rates upon certain routes, and does not in express words mention that part of the ordinance of 1889, which says "and over all portions of said company's other railway routes upon

which any kinds of motive or street railway transit are authorized to be used," or to the part which provides, "and Art. 1 of Sec. 18 of the general street railroad ordinance, passed February 7, 1879, or any provision of any other ordinance relative to the speed at which each car shall be operated, shall not be applicable to such routes." The quotation in the ordinance of 1892 is of the caption of the ordinance of 1889, and is used for the purpose of reference to everything upon the subject of speed contained in that ordinance.

This leaves the city, so far as our attention has been called to the ordinances upon the subject, without an ordinance as to the rate of speed at which electric cars can be operated upon the streets of the city of Cincinnati. This is somewhat startling, but we reach the conclusion without misgiving or hesitancy because such conclusion works little or no substantial change in the law as it would be under the ordinance of 1899 as construed in the Gannon case.

In the Gannon case [not reported] the existence or validity of the 1889 ordinance was not questioned, but it was treated as a valid and subsisting ordinance. In that case the trial court charged as follows:

"In regard to speed, the ordinance provides 'that the schedule time for operating cars over said routes 5 and 7 and over all portions of said company's other street railway routes over which any kind of motors or means of rapid transit are authorized to be used, shall not exceed ten miles an hour,' etc. I charge you that this ordinance fixing the rate of speed at which defendant's car might be operated at the time in issue here, does not mean that the car shall not be operated at any time or place at a speed exceeding ten miles an hour, but its true construction is that in planning the movements and operation of its cars the defendant company shall allow sufficient time for a car to make its round trip by running at an average speed not to exceed ten miles per hour.

"It is permissible under this ordinance for a car which has been obstructed in the more crowded and populous parts of the city and has been compelled to run at a very slow speed, to make up its time by running at a rate to exceed ten miles per hour on parts of its route which are unfrequented by vehicles and pedestrians, provided it can do so with reasonable safety. This leaves the rate of speed at which the car may travel to be determined by you, in view of all the surrounding facts and circumstances, and of the degree of care to be observed by those operating it. Manifestly a car may be operated at very much greater speed through Eden Park than on Fourth street between Main and Vine. What would be a lawful and reasonable speed for the car upon which James Gannon rode upon the night of his death is, for you, gentlemen of the jury, to determine in view of all the facts and circumstances of

9 O. C. C.—13-23

the case. And in this determination you may consider the location in the city, the time of day or night, whether or not it was between intersecting streets, the presence or absence of persons and vehicles in the street along the tracks, the load which the car was carrying, and everything which, in your judgment, would influence a reasonable man in exercising the degree of care incumbent upon the defendant company."

That charge received the approval of this court and the Supreme Court.

The law, with or without the 1889 ordinance, is that of "reasonable safety, in view of all the facts and surrounding conditions." If it is deemed wise and necessary that there be an ordinance on the subject, one should be properly and regularly passed.

Further, there were a number of special charges requested by the defendant and refused by the court. We are of opinion that the court refused the first special charge properly.

We think that the court should have given the second charge.

We think the third special charge would be better if the word "when" were changed to "if;" the word "when," perhaps not necessarily, but in its reading, seems to imply a little finding of fact by the court.

The fourth and fifth were properly refused; the sixth ought to have been given; so should the seventh and eighth; the ninth was properly refused.

For these reasons, the judgment of the court below will be reversed.

---

## ERROR—RAILROADS—NEGLIGENCE.

[Mahoning (7th) Circuit Court, October Term, 1901.]

Douglass, Voorhees and Cook, JJ.

(Judges Douglass and Voorhees, of the fifth circuit, taking the places of Judges Laubie and Burrows.)

PENNSYLVANIA CO. v. JOHN F. ALBURN, ETC.

1. PROCEEDINGS IN ERROR—SECTION 6716, REV. STAT., CONSTRUED.

Section 6716, Rev. Stat., requires that a plaintiff in error "shall file with his petition either a transcript of his final record, or a transcript of the docket or journal entries, with such original papers or transcripts thereof as are necessary to exhibit the error complained of." Where the transcript is sufficient to exhibit the errors complained of, although it may not be a full transcript of the proceedings had in the cause, it is sufficient under said section.

2. UNNECESSARY FACTS NEED NOT BE BROUGHT INTO RECORD, WHEN.

Where a plaintiff in error does not complain that the cause, in which he is seeking a reversal, has been tried two or more times in the court below, and the judgment set aside by the reviewing court on the weight of the evidence, and such trials and reversals are not necessary in the determination of the errors complained of, he need not bring such facts into the record or transcript.